Argued April 7, judgment affirmed September 10, 1971

TURLAY, *Respondent, v.* FARMERS INSURANCE
EXCHANGE, *Appellant*

488 P2d 406

*Thomas Cavanaugh,* Portland, argued the cause for appellant. With him on the brief were Schouboe & Cavanaugh, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondent. On the brief were John J. Haugh, Donald R. Wilson, and Pozzi, Wilson & Atchison, Portland.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

HOWELL, J.

Plaintiff brought this action for a declaratory judgment seeking a declaration of his rights under the uninsured motorist provision of his automobile policy with the defendant. The cause was tried before the court, and a judgment was awarded to plaintiff. The defendant appealed, and plaintiff moved to dismiss the appeal on the ground that the notice of appeal was filed before entry of the judgment. We denied plaintiff's motion to dismiss with leave, however, to plaintiff to renew the motion in the briefs and oral argument before this court.

On January 30, 1970, the trial court entered a letter opinion deciding the issues in favor of plaintiff. On February 6, 1970, Findings of Fact, Conclusions of Law, and Judgment were tendered by plaintiff. On February 9, 1970, defendant tendered alternate Findings of Fact and Conclusions of Law and Objections to plaintiff's proposed Findings of Fact and Conclusions of Law. On February 13, 1970, the trial court held a hearing on the proposed Findings of Fact and Conclusions of Law submitted by plaintiff and the Objections and alternate Findings of Fact and Conclusions of Law submitted by defendant, and signed Findings of Fact, Conclusions of Law and Judgment in favor of plaintiff. Believing that the judgment signed by the

trial judge had been duly entered on the day it was signed, the defendant filed notice of appeal on March 16, 1970, which was within the 30 days required by ORS 19.026. Service of the notice of appeal was made on plaintiff's counsel who advised defendant's counsel that the notice of appeal was premature. According to defendant's uncontroverted affidavit, the defendant then consulted the trial judge "who advised me that his clerk had not entered the order [judgment] and that he would take whatever steps were deemed necessary to correct the record." On March 26, 1970, the court signed an order entering the judgment nunc pro tunc as of February 13, 1970.

With certain exceptions not material to this case, an appellant is required by ORS 19.026 to file the notice of appeal within 30 days after the entry of the judgment appealed from. In the instant case, while the judgment was signed by the trial judge on February 13, 1970, it was not entered by the clerk until March 18, 1970, which was two days after the defendant had filed its notice of appeal. Consequently, the defendant did not comply with ORS 19.026 and file the notice of appeal within 30 days after *entry* of the judgment.

The question then presented is whether the trial court, after defendant filed the notice of appeal, acted properly in executing a subsequent order entering the judgment nunc pro tunc as of February 13, 1970.

1. "The office of a nunc pro tunc entry is to make a record of what was previously done, but not then entered; not to make an order now for then, but to enter now for then an order previously made." *Klein v. Southern Pacific Co.,* 140 F 213 (CC Or 1905). It is the purpose of a nunc pro tunc order to supply an omis-

sion in the record of action really had, but omitted through inadvertence or mistake, or to enter an order which should have been made as a matter of course and as a legal duty. *Cranston v. Stanfield et al,* 123 Or 314, 319, 261 P 52 (1927).

While there is authority that the statutory period for appeals cannot be shortened or lengthened by the parties or by a nunc pro tunc order of the court,[1] some of the cases so holding involved situations where a judgment had never been rendered[2] or where the effect of the order is to shorten the statutory time for appeal.[3]

In the instant case, however, the trial judge actually rendered his judgment on February 13, 1970. He had before him the plaintiff's proposed findings, defendant's objections and alternate findings, and heard the arguments of counsel before signing the judgment.

All that remained was for the clerk to enter the judgment. The entry of the judgment under these circumstances is a purely ministerial act. *Jones v. Thompson,* 177 Or 650, 654, 164 P2d 718 (1945).

---

[1] Freeman on Judgments states as follows:

"* * * [W]here actual entry of judgment is an essential prerequisite to an appeal or the time for appeal dates from the entry, an entry nunc pro tunc cannot validate a premature appeal nor cut off the right to appeal." 1 Freeman, Judgments 264, § 139 (5th ed 1925).

*See also* United States v. Rayburn, 91 F2d 162, 164 (8th Cir 1937).

[2] See Ballard v. Hopkins, 142 So2d 738 (Fla App 1962); Hampshire Arms Hotel Co. v. Wells, 210 Minn 286, 298 NW 452 (1941); Martin v. Smith, 11 SD 437, 78 NW 1001 (1899).

[3] Skinner v. City of El Dorado, 248 Ark 916, 454 SW2d 656 (Ark 1970); Stupp v. Cone Brothers Contracting Co., 135 So2d 457 (CA Fla 1961); Stark v. Heart River Irrig. Dist., 78 ND 302, 49 NW2d 217 (1951).

2. It is true, as the plaintiff argues, that the defendant could have re-filed the notice of appeal and the bond and the designation of record after the judgment was entered on March 18, 1970. However, we believe that the trial court acted properly in executing the order directing the judgment to be entered nunc pro tunc as of February 13, 1970, the date the court rendered the judgment. "When a judgment has been rendered or order made and the clerk has failed or neglected to enter it of record, the court has the power to thereafter order the judgment or order so rendered or made to be entered nunc pro tunc * * *." *Quartz Gold Mining Co. v. Patterson,* 53 Or 85, 96 P 551 (1909). *See also Davis v. Bar T Cattle Co.,* 247 Or 437, 431 P2d 825 (1967); *Haberly v. Farmers' Mut. Fire Rel. Ass'n,* 135 Or 32, 287 P 222, 293 P 590, 294 P 594 (1930); *City of Portland v. Blue,* 87 Or 271, 170 P 715 (1918); *Grover v. Hawthorne,* 62 Or 65, 75, 116 P 100, 121 P 804 (1912); 1 Freeman, Judgments 231, § 126 (5th ed 1925).

The motion to dismiss is denied.

## ON THE MERITS

Plaintiff filed a complaint for a declaratory judgment seeking a declaration of his rights under the terms of the uninsured motorist provision of his automobile liability insurance policy with defendant. Plaintiff alleged that he was injured as a result of the negligence of the driver of a hit-and-run vehicle; that the hit-and-run driver constituted an uninsured motorist under the terms of his policy with defendant; that he suffered injuries as a result of the accident; and that the defendant refused to pay. Plaintiff requested a judgment in the amount of $5,000, plus $3,500 as reasonable attorney fees.

In a trial before the circuit court without a jury, a judgment was entered in favor of the plaintiff for $5,000, plus $1,000 attorney fees. Defendant appeals.

Generally, the defendant contends that the court erred in finding that a hit-and-run vehicle was involved in the accident in question; that plaintiff failed to give defendant notice of the accident as required by the policy; and that plaintiff's cause of action is barred by certain time provisions contained in the policy and by the two-year tort statute of limitations, ORS 12.110.

The plaintiff's policy with the defendant contained the standard provision relating to hit-and-run vehicles as uninsured vehicles and defining a hit-and-run vehicle as follows:

" 'Hit-and-run vehicle' means a motor vehicle or trailer which causes bodily injury to an insured arising out of physical contact of such motor vehicle or trailer with the insured or with an automobile which the insured is occupying at the time of the accident, provided (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run motor vehicle'; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the Company within 30 days thereafter a statement under oath that the insured has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (c) at the Company's request, the insured makes available for inspection the automobile which he was occupying at the time of the accident."

The evidence disclosed the following facts: On

November 10, 1965, plaintiff was driving his vehicle south on Interstate 5 in Portland. Plaintiff was in the inside or left-hand lane of the three lanes for southbound traffic. Traffic in plaintiff's lane came to a stop, and while plaintiff was stopped, he was rear-ended by a car driven by James Starr. Plaintiff's car was forced into the car preceding plaintiff and was also damaged in the rear by the impact from the Starr vehicle. When plaintiff and Starr were exchanging information, Starr stated that he had been rear-ended by another vehicle, causing him to run into plaintiff. Plaintiff asked Starr, "Well, if you got struck in the rear, why didn't you get the man's name and address?" Starr made no reply. On examining the rear of the Starr vehicle, plaintiff saw no evidence of damage, and Starr did not point out any damage. Because of damage to its front end, the Starr vehicle was not able to move; other traffic pulled around the car and moved forward.

The following day plaintiff notified defendant of the accident but made no mention of a hit-and-run vehicle. Neither did he file a hit-and-run report with the police within 24 hours or report to the company within 30 days that he had a cause of action for damage against a person "whose identity is unascertainable" as required by the policy. Plaintiff believed Starr to be the responsible party in the collision.

The defendant paid for the repairs to plaintiff's vehicle, paid plaintiff's medical expenses, and subrogated its collision claim against the Starr vehicle. On February 3, 1966, in response to a questionnaire sent him by defendant, the plaintiff gave the following answer to a question regarding whether Starr had made any statement after the accident:

"Starr stated he saw my brake lights and

braked and another car hit him but viewing rear of his car saw no indication of same."

The defendant made virtually no investigation of the accident, before or after this interrogatory, and Starr's insurer conducted extended negotiations of settlement with plaintiff. Apparently plaintiff, defendant, and even Starr's insurer did not believe that a hit-and-run driver had been involved in the accident.

Since plaintiff and Starr were unable to settle plaintiff's claim, plaintiff retained counsel to represent him. In November, 1967, plaintiff filed an action against Starr, who was then in the military service. Starr's deposition was taken in June, 1968, and at that time Starr testified that he was struck by a hit-and-run vehicle. Starr testified to the same effect ten days later at the trial, which resulted in a verdict for Starr. Following trial, plaintiff filed a claim with defendant for recovery under the uninsured motorist provision of his policy and sought arbitration. The parties later stipulated to this declaratory judgment proceeding instead of arbitration.

The parties stipulated in the instant case that the court could consider the transcript of testimony in the case of *Turlay v. Starr*. As mentioned, Starr had therein testified (and the jury apparently believed) that his vehicle had been hit in the rear by another vehicle which left the scene of the accident. In the case at bar, the plaintiff testified that Starr had told him he had been struck by another vehicle but that Starr did not secure the name and address of the person responsible. There was ample evidence to support the trial court's finding that the accident was caused by the negligence of a hit-and-run vehicle.

For its second assignment of error, defendant

argues that plaintiff is precluded from recovery because he did not report a hit-and-run accident to the police within 24 hours or report to the defendant within 30 days that he had a cause of action for damages against a person "whose identity is unascertainable."

The trial court found as follows:

"The uninsured motorist was a hit and run driver, and plaintiff did not know, and had no means of learning the identity of the uninsured motorist. It wasn't learned by the plaintiff until the deposition of James Roy Starr was taken, that Starr did not know, nor had any means of learning the identity of the operator of the third vehicle."

3. An insured may be excused for a delay in giving notice where it appears that he had no knowledge concerning the accident and could not have acquired such knowledge by the exercise of reasonable diligence. *Great American Ins. Co. v. General Ins. Co. of Am.,* 257 Or 62, 475 P2d 415 (1970), citing *Hoffman v. Employers Liability Assurance Corp.,* 146 Or 66, 29 P2d 557 (1934); 8 Appleman, Insurance Law and Practice 71, 74, § 4742 (1968).

4. Plaintiff's vehicle was struck by the Starr vehicle and not by the hit-and-run vehicle. After the collision, Starr told plaintiff that he had been hit by another vehicle, but he did not point out any signs thereof to plaintiff, and plaintiff could see no damage to the rear of Starr's vehicle. Additionally, Starr offered no explanation for his failure to attempt to secure the name and address of the other driver. The defendant took the position that Starr was the individual responsible for the accident and made no investigation of the possibility of a hit-and-run driver being involved, even

after plaintiff reported Starr's conversation about being hit in the rear. The defendant wrote to Starr's adjuster stating that "our investigation established that the accident was caused by the negligent operation of your policyholder's vehicle." Apparently the defendant believed throughout the entire case that Starr was responsible for the accident and that the accident was not caused by a hit-and-run driver. Under these circumstances, plaintiff was similarly excused from failing to report a hit-and-run accident to the police or to the defendant.

5. For its third assignment of error, the defendant argues that the plaintiff's cause of action is barred because of plaintiff's failure to bring a suit against the uninsured motorist within one year from the date of the accident as required by the policy and that, in any event, plaintiff's action is barred by the two-year statute of limitations for bringing actions in tort. ORS 12.110.

The policy contained the following clause:

"To pay all sums determined to be payable as provided below, which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance or use of such uninsured motor vehicle; provided however, for the purposes of this coverage: (1) Insurance under Coverage A of this policy must be in effect at the time of such accident; (2) determination as to whether the insured is legally entitled to recover such damages, and (if so entitled) the amount thereof, shall be made by agreement between the insured and the Company or, in the event of disagreement, by arbitration; (3) *no cause of action shall accrue to the insured unless within one year from the date of accident (a)*

*suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction,* or (b) agreement as to the amount due under this Part II has been concluded, or (c) the insured has formally instituted arbitration proceedings; * * *." (Emphasis added)

The quoted clause above obligates the defendant to pay all sums which the uninsured motorist would be obligated to pay as damages. However, the insured has no cause of action against his insurer under the uninsured motorist provision of his policy unless the insured has filed a suit for bodily injury against the uninsured motorist within one year from the date of the accident. The provision applies generally to an "uninsured motorist" and to an "uninsured motor vehicle." It is doubtful that defendant intended the clause requiring suit to be brought within one year to apply to a hit-and-run motorist, since the policy defines a hit-and-run motorist as one whose identity cannot be ascertained. No action can be brought against an unidentified party.

In this case, the trial court found that "plaintiff did not know and had no means of learning the identity" of the hit-and-run driver. The defendant's adjuster testified that had an uninsured motorist claim been filed by plaintiff, he "probably would not have been able to locate" the hit-and-run driver. If plaintiff did not know and had no means of ascertaining the identity of the hit-and-run driver, it would have been impossible for him to have filed an action against him and complied with the coverage requirement. Under these circumstances, we do not believe that filing an action against the uninsured motorist was a condition precedent to plaintiff's cause of action against defendant.

6. The sole remaining question is whether plaintiff's right to recover against defendant is controlled by the six-year contract statute of limitations provided by ORS 12.080, or the two-year tort statute of limitations under ORS 12.110. The question is one of first impression in this state, but almost without exception the courts in other jurisdictions have held that an action against the insurer under an uninsured motorist clause in the policy is governed by the contract statute of limitations. *Hartford Acc. and Indem. Co. v. Mason,* 210 So2d 474 (Fla App 1968); *Booth v. Fireman's Fund Insurance Company,* 253 La 521, 218 So2d 580 (1958); *Breen v. New Jersey Manufacturers Indem. Ins. Co.,* 105 NJ Super 302, 252 A2d 49 (1969); *Motor Vehicle Acc. Indem. Corp. v. McDonnell,* 23 App Div 2d 773, 258 NYS2d 735 (1965); *Schleif v. Hardware Dealer's Mutual Fire Ins. Co.,* 218 Tenn 489, 404 SW2d 490 (1966). *See also* Annot. 28 ALR3d 580; Note, 48 Calif L Rev 516, 531 (1960). *But see Country Mutual Ins. Co. v. Nat'l Bank of Decatur,* 109 Ill App 2d 133, 248 NE2d 299 (1969).

The courts have applied the contract statute of limitations because the intent of uninsured motorist coverage is to protect the insured, and is not to provide free liability insurance for the otherwise uninsured motorist. The insurer does not represent the uninsured motorist; the insurer represents itself on its own contract with its own insured who has paid a premium for this feature of his contract of insurance. Consequently, the liability of the insurer is based on its contract with the insured, and any claim of the insured also is governed by the contract. *Sahloff v. Western Casualty and Surety Co.,* 45 Wisc 2d 60, 171 NW2d 914 (1969).

Finding no error, the judgment is affirmed.